USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/28/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NUBIA PETERS, Plaintiff, -against- VIACOMCBS INC., Defendant. | 22-CV-6287 (VEC) OPINION & ORDER |

VALERIE CAPRONI, United States District Judge:

Plaintiff Nubia Peters, who is proceeding *pro se*, brought this action against Defendant ViacomCBS Inc. Plaintiff worked as a stand-in on *Billions*, a television show. She alleges that Defendant unlawfully refused to accommodate her medical and religious objections to the COVID-19 vaccine and terminated her. Defendant moved for summary judgment, Dkts. 78–79, and Plaintiff opposed, Dkt. 96.

This Court referred the Motion for Summary Judgment to Magistrate Judge Gorenstein. Order Referring Case to Magistrate Judge, Dkt. 30. In his Report & Recommendation ("R&R"), Judge Gorenstein recommended Defendant's motion be granted, except for one New York City Human Rights Law ("NYCHRL") claim, over which he recommended that the Court decline to exercise supplemental jurisdiction. R&R, Dkt. 116 at 27. Both parties objected to the R&R and responded to each other's objections. *See* Pl.'s Objs. to R&R, Dkt. 125 ("Pl.'s Objs."); Def.'s Objs. to R&R, Dkt. 128 ("Def.'s Objs."); Def.'s Resps. to Pl.'s Objs. to R&R, Dkt. 132 ("Def.'s Reply"); Pl.'s Resps. to Def.'s Objs. to R&R, Dkt. 135 ("Pl.'s Reply").

The Court adopts the recommendations of the R&R, except as to the claim over which Judge Gorenstein would decline to exercise jurisdiction. As urged by both parties, the

Undersigned decides Plaintiff's NYCHRL cooperative dialogue claim on the merits.[1] Defendant's Motion for Summary Judgment is GRANTED in its entirety, and Plaintiff's Complaint is DISMISSED with prejudice.

**BACKGROUND[2]**

Defendant owns Showtime, the television network that produces the show *Billions*. Washington Decl., Dkt. 82 at ¶¶ 5–8. Plaintiff worked as a stand-in on *Billions* from June to November 2021.[3] Am. Compl., Dkt. 36 at ¶¶ 21–22, 24–25, 42. A stand-in, as the name suggests, stands in for a principal actor before filming, so that the crew can set up cameras, lighting, and other technical elements, minimizing time on set for the principal. Scali Decl., Dkt. 83 at ¶ 6. The crew uses the stand-in, *inter alia*, to adjust the lighting that will hit the actor's face. *Id.* at ¶ 11; R&R, Dkt. 116 at 3 (citing the importance of the lack of obstruction of a stand-in's face).

Production of *Billions* shut down in March 2020 due to the COVID-19 pandemic. Washington Decl., Dkt. 82 at ¶ 9. Production later resumed pursuant to safety protocols in the SAG-AFTRA Return to Work Agreement, which included required personal protective equipment, including face masks. *Id.* at ¶ 11; *see* Kulak Decl., Dkt. 81-4, Ex. 4 (Zone A). When the COVID-19 vaccine became available, the policy shifted to require those working in the area on set where Plaintiff worked to be vaccinated. Washington Decl., Dkt. 82 at ¶ 10. The policy provided for reasonable accommodations for "individuals who cannot be vaccinated due to

---

1 The R&R refers to this as an interactive process claim, but this Opinion & Order mirrors the language of the current NYCHRL and refers to the required process as a "cooperative dialogue." *See* N.Y.C. Admin. Code § 8-107(28); *see also* Def.'s Objs. at 1 n.1.

2 The Court will recount only the most relevant factual and procedural history. The R&R contains a more extensive recitation of the background of the case. *See* R&R, Dkt. 116 at 2–7.

3 Plaintiff worked on *Billions* "[s]ince 2019," but her pre-COVID-19 employment on the show is not relevant to this case. Am. Compl., Dkt. 36 at ¶ 10.

disability or a sincerely held religious belief, practice, or observance." Kulak Decl. Dkt. 81-2, Ex. 2 at 6.

Plaintiff sought an exemption from the vaccine requirement on medical and religious grounds. Washington Decl., Dkt. 82, Ex. A at 7. Defendant denied her religious accommodation request. *Id.* at 5. Her role specifically required her to be unmasked in order to be lit properly, including when she was within six feet of others; granting her an accommodation would have compromised workplace safety. *Id.*

Plaintiff then asked her doctor for documentation to support a disability exemption. Am. Compl., Dkt. 36 at ¶¶ 31, 34. The medical documentation reflected that Plaintiff had several allergies and suffered from anxiety and depression "due to [a] possible allergic reaction" to the vaccine. Kulak Decl., Dkt. 81-6, Ex. 6 at 4. Plaintiff testified that she is allergic to iodine, shellfish, dairy, nuts, and gluten. Peters Dep., Dkt. 81-7 at 193:22–195:25. Plaintiff was unaware if any of these allergens were in the COVID-19 vaccines that were available at the time; she only knew that, according to her pastor, the vaccines contained "aborted fetus cells." [4] *Id.* at 201:20–202:11.

Based on the submission from Plaintiff's doctor, the third party responsible for determining disability for Defendant found that her condition was "[l]ikely disabling" under the Americans with Disabilities Act ("ADA"). Washington Decl., Dkt. 82, Ex. B at 11. The third party proposed possible accommodations, including allowing Plaintiff to remain masked until

[4] Plaintiff asserts that she submitted as part of her evidence in this case medical documentation of others who suffered severe allergic reactions to COVID-19 vaccines and vaccine components. Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Summ. J., Dkt. 97 at 11. The Court, however, like Judge Gorenstein, R&R, Dkt. 116 at 10 n.4, sees no such evidence in the record. Further, and more importantly, Plaintiff has not submitted any documentation regarding her own reactions to vaccines or vaccine components.

she was actively in front of the cameras; Defendant maintained that the production was unable to accommodate Plaintiff. *Id.* at 9–11.

Plaintiff's employment was then terminated. Def.'s 56.1 Stmt., Dkt. 80 at ¶ 24. Defendant refused to provide similar accommodations to five background actors on *Billions*. Pl.'s Exs., Dkt. 99 at 1–2. Only two people who worked on *Billions* — a video playback technician and a craft services crew member — were allowed exemptions to the vaccine requirement. *Id.* If production of *Billions* were required to shut down due to a COVID-19 exposure or infection, the network's financial controller estimated that it would have cost at least $373,634.18 per day. Huyghebaert Decl., Dkt. 84 at ¶ 8.

Plaintiff sued alleging violations of the ADA, the Rehabilitation Act of 1973, Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law ("NYSHRL"), and NYCHRL, as well as contract claims. Am. Compl., Dkt. 36 at 3–4. Following the close of discovery, Defendant moved for summary judgment, Dkts. 78–79, and Plaintiff opposed, Dkt. 96.

## LEGAL STANDARDS

### I. R&R Review

In reviewing an R&R, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). When no timely objections are made to a magistrate judge's R&R, a district court may adopt the R&R unless a "clear error on the face of the record" is present. *Phillips v. Reed Grp., Ltd.*, 955 F. Supp. 2d 201, 211 (S.D.N.Y. 2013) (quoting *Nelson v. Smith*, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985)). Clear error exists only when the reviewing court is left with a "definite and

firm conviction that a mistake has been committed." *Cosme v. Henderson*, 287 F.3d 152, 158 (2d Cir. 2002) (quoting *McAllister v. United States*, 348 U.S. 19, 20 (1954)).

When a party has made specific, written objections to the R&R, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." FED. R. CIV. P. 72(b)(3); *see also United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997) (citing 28 U.S.C. § 636(b)(1)). To warrant *de novo* review, the objections must be "specific and are to address only those portions of the proposed findings to which the party objects." *Pineda v. Masonry Constr., Inc.*, 831 F. Supp. 2d 666, 671 (S.D.N.Y. 2011) (citation omitted). If "a party's objections are conclusory or general, or simply reiterate original arguments, the district court reviews the [R&R] for clear error." *Id.*; *see, e.g.*, *IndyMac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.*, 07-CV-6865 (LTS) (GWG), 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008); *O'Callaghan v. N.Y. Stock Exch.*, 12-CV-7247 (AJN) (SN), 2013 WL 3984887, at *1 (S.D.N.Y. Aug. 2, 2013) (collecting cases), *aff'd*, 563 F. App'x 11 (2d Cir. 2014). "'[E]ven a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings.'" *Clarke v. United States*, 367 F. Supp. 3d 72, 75 (S.D.N.Y. 2019) (quoting *Pinkney v. Progressive Home Health Servs.*, 06-CV-5023 (LTS) (JCF), 2008 WL 2811816, at *1 (S.D.N.Y. July 21, 2008)).

## II. Summary Judgment

Pursuant to FED. R. CIV. P. 56(a), "The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "On a motion for summary judgment, the moving party bears the initial burden of establishing that no genuine factual dispute exists, and, if satisfied, the burden shifts to the nonmoving party

to 'set forth specific facts showing that there is a genuine issue for trial' . . . and to present such evidence that would allow a jury to find in [her] favor." *Blue v. City of New York*, 14-CV-7836 (VSB), 2018 WL 1136613, at *5 (S.D.N.Y. Mar 1, 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)) (citing *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000)).

To survive a motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Blue*, 2018 WL 1136613, at *5 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Rather, the evidence must be such "that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In assessing the sufficiency of the evidence, the court must "view the evidence in the light most favorable to the non[]moving party and draw all reasonable inferences in its favor," granting summary judgment only if "'no reasonable trier of fact could find in favor of the nonmoving party.'" *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (quoting *Lund's, Inc. v. Chemical Bank*, 870 F.2d 840, 844 (2d Cir. 1989)) (citing *Consarc Corp. v. Marine Midland Bank*, 996 F.2d 568, 572 (2d Cir. 1993)).

"[S]pecial solicitude" is afforded to *pro se* litigants in interpreting their filings. *Graham v. Lewinski*, 848 F.2d 342, 244 (2d Cir. 1988); *see Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006). Submissions by *pro se* litigants are interpreted "to raise the strongest arguments that they suggest." *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)); *see also Hughes v. Rower*, 449 U.S. 5, 14 n.7 (1980). One's *pro se* status, however, "does not exempt [one] from compliance with the relevant rules of procedural and substantive law." *Triestman*, 470 F.3d at 477. Furthermore, the court's duty to liberally construe a *pro se* plaintiff's submissions does not mean that the Court

has an obligation to rewrite their submissions. *Rodriguez v. Corizon Health Care*, 15-CV-5251, 2016 WL 3766397 (GBD) (GWG), at *2 (S.D.N.Y. July 11, 2016) (citing *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009)).

### III. Supplemental Jurisdiction

Whether to exercise supplemental jurisdiction is within the Court's discretion. *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 85 (2d Cir. 2018). Supplemental jurisdiction, ordinarily, requires "the relationship between the federal and state claims [to be] 'such that the plaintiff would ordinarily be expected to try them all in one judicial proceeding.'" *LaChapelle v. Torres*, 37 F. Supp. 3d 672, 680 (quoting *Montefiora Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 332 (2d Cir. 2011)) (cleaned up). A district court "may decline to exercise supplemental jurisdiction over a claim" if the court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). Courts consider the *Gibbs* factors — "judicial economy," "convenience," "fairness," and "comity" — in determining whether to exercise supplemental jurisdiction. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *see Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 170 (2d Cir. 2014).

## DISCUSSION

Both parties objected to the R&R.[5] Pl.'s Objs.; Def.'s Objs.

---

5 This Court agrees with the reasoning in the R&R to which neither party objects, such as that concerning the Vaccine Control Group claim. *See* R&R, Dkt. 116 at 27.

There are some objections which are, arguably, merely a recitation of original arguments or otherwise conclusory or general. *See, e.g.*, *supra* at 8 (concerning the weight given to medical evidence in the record). These objections are only entitled to review for clear error. Nonetheless, especially in Plaintiff's case, given the leniency afforded to *pro se* litigants, the Court will review the portions of the R&R that these objections address *de novo*.

Plaintiff submitted a new objection in her response to Defendant's objections. Pl.'s Reply at 8 (asserting, for the first time, an eighth objection concerning "bodily autonomy and coercion"). This objection is untimely and will not be considered. The Court notes, however, that were it considered, it would not change the outcome.

Plaintiff's first two objections relate to her disability discrimination claims. Pl.'s Objs. at 1–2. Plaintiff argues that the R&R erred by (1) giving insufficient weight to the medical evidence in the record, such as the note from Plaintiff's doctor, and (2) failing to consider Plaintiff's reluctance to use over-the-counter medication as support for her "broader medical-sensitivity narrative." *Id.*

The medical evidence, including her doctor's note, does not move the needle in Plaintiff's favor. Plaintiff failed to link her allergies (to iodine, shellfish, dairy, nuts, and gluten) to the COVID-19 vaccine. R&R, Dkt. 116 at 10 ("[T]here is no evidence that these substances are in any COVID-19 vaccine or that plaintiff is allergic to any component [of] the vaccine."); *see* Peters Dep., Dkt. 81-7 at 205:12. Crediting Plaintiff's "broader medical-sensitivity narrative" does not create a genuine issue of material fact regarding whether she was disabled. Plaintiff has not proven that she was allergic to any component of the COVID-19 vaccine nor has she demonstrated that any resulting anxiety/depression arising from the potential of being vaccinated substantially limited a major life activity. *See* 42 U.S.C. §§ 12102(1)(A), 12102(2)(A). The closest Plaintiff gets is a showing that her anxiety had an impact on her ability to concentrate, but that is insufficient. *See* Kulak Decl., Dkt. 81-6, Ex. 6 at 2. The link between her vaccine-driven anxiety/depression and her lack of concentration is not clear, and the cursory statement from her doctor does not prove that her condition "substantially limits" her concentration, as the law requires. 42 U.S.C. § 12102(1).

Plaintiff's third objection concerns her religious accommodation claim; she argues that her pastor's letter supports the sincerity of her religious belief and that masking remained feasible as an accommodation. Pl.'s Objs. at 2. Defendant did not dispute the sincerity of

Plaintiff's religious belief.[6] Def.'s Reply at 4. Assuming Plaintiff made a *prima facie* case alleging religious discrimination under Title VII, *Russo v. Patchogue-Medford Sch. Dist.*, 129 F.4th 182, 185–86 (2d Cir. 2025), Defendant has appropriately substantiated its position that granting an exemption would have posed an undue hardship, R&R, Dkt. 116 at 15–21; *see* Huyghebaert Decl., Dkt. 84 at ¶ 8. The fact that Defendant bore the cost of stand-ins wearing personal protective equipment before the availability of vaccines does not mean that it was required to continue to bear those costs once vaccines were widely available. R&R, Dkt. 116 at 16–17; *see Richardson v. Nat'l Basketball Ass'n*, 23-CV-6926 (DLC), 2025 WL 2402614, at *7–10 (S.D.N.Y. Aug. 18, 2025). Wearing personal protective equipment would fundamentally change the function of a stand-in's job. Defendant introduced uncontroverted evidence that when a stand-in was masked, shots often had to be relit when the unmasked principal actor stepped in, defeating the utility of using a stand-in. *See* Scali Decl., Dkt. 83 at ¶¶ 12–16. Eliminating this essential function of the job would not have been a reasonable accommodation because it would have imposed an undue hardship on the employer. *See Devita v. Mount Sinai Hosp.*, 2024 WL 3046121, at *6 (S.D.N.Y. June 18, 2024) (quoting *Shannon v. N.Y.C. Transit Auth.*, 332 F.3d 95, 100 (2d Cir. 2003)) ("The law is clear that a reasonable accommodation under Title VII 'can never involve the elimination of an essential function of a job,' which would necessarily constitute an undue hardship.").

The Court also notes that Plaintiff has introduced new evidence with her objections; procedurally that was improper.[7] *See* Peters Decl., Dkts. 124 at 2, 124-1. Further, the evidence,

---

[6] Defendant was not required to solicit documentation, such as a pastor's letter, from Plaintiff supporting her religious belief in order to engage in an interactive process or cooperative dialogue. *Contra* Pl.'s Reply at 3–4.

[7] New evidence cannot be introduced at this stage. *See Roach v. New York City Hous. Auth.*, 23-CV-8135 (JGLC), 2025 WL 2430603, at *1 (S.D.N.Y. Aug. 22, 2025) ("[N]ew arguments and factual assertions cannot properly be raised for the first time in objections to the [R]eport and [R]ecommendation, and indeed may not be

even if properly before the Court, would not change the outcome. A photograph of another stand-in wearing a mask at some point on some set, without more information (such as whether that stand-in was vaccinated and whether, at the time of the photograph, she was actively working or was between shots), does not prove that other stand-ins were allowed to perform their jobs masked. *See* Peters Decl., Dkt. 124-1; Def.'s Reply, Dkt. 132 at 6.

Plaintiff's fourth objection argues that the cost of shutting down was not unavoidable given her belief that a stand-in contracted COVID-19 and the production did not shut down. Pl.'s Objs. at 3. This belief, without more, does not create a genuine issue of fact. The level of risk alone — *i.e.*, approximately $370,000 per day — has been held to be an undue hardship. *See Bordeaux v. Lions Gate Entm't Corp.*, 703 F. Supp. 3d 1117, 1138 (C.D. Cal. 2023), *aff'd*, 2025 WL 655065 (9th Cir. 2025) (holding a $300,000-per-day shutdown risk constituted undue hardship as a matter of law in an entertainment production); s*ee also Richardson*, 2025 WL 2402614, at *10. Plaintiff takes issue with the dollar amounts provided by the network's financial controller and the materials underlying them, Pl.'s Reply 56.1 Stmt., Dkt. 95 at ¶ 26, but she introduces no evidence that creates a question of fact whether the amount is accurate. Beyond the financial cost of the shutdown, Defendant alleges a health and safety risk to other employees that would have been created by having unvaccinated personnel on the set. Washington Decl., Dkt. 82 at ¶ 12. Plaintiff's unsubstantiated claim that, at some point, production did not shut down even though a stand-in contracted COVID-19 does not create a genuine factual dispute as to the hardship imposed on Defendant, and no reasonable jury could find otherwise.

---

deemed objections at all."). The new evidence Plaintiff has submitted is also inadmissible hearsay because it is a statement from someone out-of-court being offered to prove the truth of the matter asserted. *See* FED. R. EVID. 802.

Plaintiff's fifth objection concerns her retaliation claims. Pl.'s Objs. at 3. Plaintiff argues that she was denied an accommodation "immediately," *i.e.*, "before [Defendant] fully engaged with her medical documentation"; she argues that the timing supports an inference that her protected request was a motivating factor in the decision to terminate her. *Id.* Plaintiff also asserts that the record shows "individualized [hostile] treatment" toward her, further supporting her retaliation claim. *Id.*

Defendant's mandatory COVID-19 vaccination policy was announced before Plaintiff requested an exemption, and the policy predetermined the consequence of non-compliance: Anyone who was not vaccinated and was not exempted would be terminated. Defendant asserts that it was not Plaintiff's pursuit of an accommodation that caused her termination; rather, it was her failure to be vaccinated without an approved exemption. *See Sharikov v. Philips Med. Sys. MR, Inc.*, 103 F.4th 159, 171 (2d Cir. 2024) ("Thus, rather than show Sharikov was terminated because of his protected activity, the allegations in the Complaint make clear that he was fired because of his failure to comply with the company-wide vaccine policy. Because the policy applied to all employees regardless of whether they had engaged in protected activity, Sharikov has not plausibly pleaded a connection between his invocations of the ADA and his termination"). While Plaintiff's accommodation request was denied on the day it was submitted (perhaps because she was scheduled to work the following day, *see* Pl.'s Exs., Dkt. 99 at 11), there is no minimum time required for an interactive process (under the ADA and NYSHRL) or cooperative dialogue (under NYCHRL) to occur. The law only requires good faith. *See* N.Y.C. Admin. Code § 8-102; *see also Baker v. Bridge Inc.*, 805 F. Supp. 3d 521, 549–50 (S.D.N.Y. 2025). The Court has reviewed the exchanges in question. Contrary to Plaintiff's assertions, there is no evidence of bad faith on Defendant's part. Plaintiff's back and forth with Defendant's

HR Director, LaChondra Washington, regarding her job duties, the basis for her request, the third-party claim administrator's role, and, finally, the written explanation of denial is sufficient; it reflects no hostility towards Plaintiff; and it does not support a narrative of retaliation. *See* Washington Decl., Dkt. 82 at ¶ 14, Ex. A.

There is no evidence that Defendant treated other similarly situated workers differently or refused seriously to consider continued masking as an alternative. The only employees who were exempted from the mandatory vaccination policy were not similarly situated to Plaintiff; there is no evidence that their jobs in craft services and video playback required them to unmask. *See* Pl.'s Exs., Dkt. 99 at 1–2. Employees in positions similar to Plaintiff's, *i.e.*, background actors, were denied exemptions. *Id.* And, although the third-party claim administrator found Plaintiff's medical situation "[l]ikely disabling," Washington Decl., Dkt. 82, Ex. B at 11, Defendant determined that the suggested accommodations were not viable. *Id.* at Ex. A. The third-party vendor was not responsible for considering whether any potential accommodation would constitute an undue hardship for Defendant. *See id.* at Ex. B.

Plaintiff's sixth objection — and both of Defendant's objections — concern Plaintiff's potential NYCHRL claim that Defendant failed to engage in a cooperative dialogue. Pl.'s Objs. at 4; Def.'s Objs. at 2–12. The R&R found that Plaintiff's Complaint asserted this claim. R&R, Dkt. 116 at 9, 24–26. Plaintiff objects to the recommendation that the Court decline to exercise supplemental jurisdiction over this claim. Pl.'s Objs. at 4. Defendant objects to construing Plaintiff's Complaint to have raised this claim and, alternatively, to the R&R's recommendation that the Court not exercise supplemental jurisdiction over it and not grant summary judgment in Defendant's favor. Def.'s Objs. at 2–12.

The Court is sympathetic to Defendant's argument that "[f]acts concerning an accommodation request do not automatically plead every distinct accommodation-related cause of action available under the NYCHRL." Def.'s Objs. at 3, 9; *Rodriguez*, 2016 WL 3766397, at *2. Nonetheless, liberally construing the complaint, this claim was made. R&R, Dkt. 116 at 24–26; *see also Triestman*, 470 F.3d at 474. This issue was not separately briefed by either party as part of the summary judgment briefing, but it was addressed by both parties in their objections and responses (and was implicitly addressed in the summary judgment briefing insofar as the facts supporting or refuting it overlap with other claims). *See* R&R, Dkt. 116 at 24–26; Pl.'s Objs. at 4; Def.'s Objs. at 2–12; Pl.'s Reply at 9; Def.'s Reply at 10.

Both parties ask the Court to resolve Defendant's motion for summary judgment on this claim now, although they disagree on how it should be decided. Pl.'s Objs. at 4; Def.'s Objs. at 4–12. Sending this single claim to state court after years of federal court litigation (and after this Court has become familiar with the facts of the case) would not promote judicial economy. The relationship among all of these claims is such that one would ordinarily expect to try them in a single judicial proceeding. *See LaChapelle*, 37 F. Supp. 3d at 680. Both parties argue that it would be better to decide this claim now rather than to engage in further litigation in state court. Pl.'s Objs. at 4; Def.'s Objs. at 1, 11. The Court agrees. The Court has supplemental jurisdiction over the claim, and the record is sufficiently developed to be able to decide Defendant's motion on the merits.

Under the NYCHRL, a "cooperative dialogue" is defined as a process during which an employer and a person who may be entitled to an accommodation "engage in good faith in a written or oral dialogue concerning the person's accommodation needs; potential accommodations that may address the person's accommodation needs, including alternatives to a

requested accommodation; and the difficulties that such potential accommodations may pose for the covered entity." N.Y.C. Admin. Code § 8-102.

Plaintiff was notified of the vaccination policy and provided information on how to request an exemption. Def.'s Objs. at 5 (citing Kulak Decl., Dkt. 81-5, Ex. 5). She requested an exemption and then was questioned regarding her request and her job responsibilities. *Id.* (citing Washington Decl., Dkt. 82, Ex. A at 6–7; Pl.'s Exs., Dkt. 99 at 11). Plaintiff was given information about submitting documentation to the third-party claim administrator. *Id.* (citing Washington Decl., Dkt. 82, Ex. A at 6). Washington issued a written denial with an explanation of why, in light of Plaintiff's job duties, no reasonable accommodation could be granted. *Id.* at 6 (citing Washington Decl., Dkt. 82, Ex. A at 5). Plaintiff arranged for her doctor to complete paperwork for the third-party claim administrator, and Washington responded, again explaining why no reasonable accommodation was possible. *Id.* (citing Washington Decl., Dkt. 82, Ex. B at 9–11). Plaintiff acknowledged Washington's communication. *Id.* at 7 (citing Pl.'s Exs., Dkt. 99 at 19). This back-and-forth, despite the relatively brief timeframe during which it occurred, constitutes a cooperative dialogue. *See* N.Y.C. Admin. Code §§ 8-102, 8-107; *Baker*, 805 F. Supp. 3d at 549 ("[T]he NYCHRL requires only that Defendants engage in a [cooperative dialogue] with the disabled individual; it does not require that the individual be satisfied with that process or that the process result in the individual's preferred accommodation.") (citation omitted); *Balchan v. New York City Hous. Auth.*, 21-CV-10326 (JGK), 2025 WL 588021, at *9 (S.D.N.Y. Feb. 24, 2025). Thus, Defendant is entitled to summary judgment on this claim because, based on the undisputed evidence, no reasonable jury could find in Plaintiff's favor.

In her final objection, Plaintiff contends that Defendant violated the requirement in the SAG-AFTRA Return to Work Agreement that vaccination mandates be "subject to reasonable

accommodations as required by law." Pl.'s Objs. at 4. Plaintiff's claim based on that Agreement is time-barred. *See* Def.'s Mem. of Law in Supp. of Mot. for Summ. J., Dkt. 79 at 29–30 (describing the applicable statutes of limitations versus when Plaintiff asserted her claims). Even were it not, there can be no dispute that the mandate was subject to reasonable accommodation. *See* R&R, Dkt. 116 at 15–21. One was not available to Plaintiff because any proposed accommodation would have imposed an undue hardship on her employer. *Id.* As such, no reasonable jury could find that Defendant violated its contractual duties under the SAG-AFTRA Return to Work Agreement.

**CONCLUSION**

For the foregoing reasons, all of Plaintiff's objections are overruled. Defendant's first objection (that Plaintiff did not assert an NYCHRL cooperative dialogue claim) is overruled, but its second objection (that the same claim should be decided on the merits) is granted. The R&R is adopted in full, except as to Plaintiff's NYCHRL cooperative dialogue claim, which this Court construes as raised by Plaintiff's Complaint but on which this Court grants summary judgment in favor of Defendant. Defendant's Motion for Summary Judgment is, therefore, GRANTED in full. Plaintiff's Complaint is DISMISSED with prejudice. The Clerk of Court is respectfully directed to enter judgment for Defendant and to close this case.

**SO ORDERED.**

Valerie Caproni

**VALERIE CAPRONI**
**United States District Judge**

**Dated: September 28, 2026**
**New York, New York**